**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
04/25/2019

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 18-30995 |
| Mark Contreras | § | |
| | § | Chapter 13 |
| Debtor | § | |

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 16-34693 |
| James L. Curry | § | |
| | § | Chapter 13 |
| Debtor | § | |

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 16-35750 |
| David Campbell | § | |
| Heather Campbell | § | Chapter 13 |
| | § | |
| Debtors | § | |

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 18-33054 |
| Wanda Hubbard | § | |
| | § | Chapter 13 |
| Debtor | § | |

**<u>MEMORANDUM OPINION</u>**

Before the Court are applications for compensation filed by attorney Reese W. Baker (hereinafter "Baker"), a volume Chapter 13 practitioner in this division.[1]  These applications raised similar issues, which is why this Court issues this opinion addressing them together. These issues include (a) the reasonableness of requested fees necessary for the work performed; (b) the diminution of returns to unsecured creditors for excessive fees; (c) duplication of effort; (d) billing for secretarial tasks; (e) billing for deficient filings; (f) the Court's standard for board-

---

[1] Case No. 18-30995, ECF No. 71; Case No. 16-34693, ECF No. 115; Case No. 16-35750, ECF No. 98; Case No. 18-33054, ECF No. 53.

certified attorneys; and (g) the potentiality of attorney disqualification due to a conflict of interest.  The Chapter 13 Trustee has objected to all the pending fee applications.

## HISTORICAL BACKGROUND OF THE CASES

**Mark Contreras (Case No.  18-30995)**

Baker filed this Chapter 13 case on behalf of debtor Mark Contreras on March 5, 2018. Baker also represented Mr. Contreras in his original bankruptcy case (Case No. 17-32841), filed on May 2, 2017.  That case was dismissed on November 21, 2017.  The Statement of Financial Affairs filed on March 16, 2018 (ECF No. 10), indicates that Mr. Contreras paid Baker's law firm $400.00 on May 2, 2017, $650.00 on March 2, 2018, and $3,435.00[2] via the Chapter 13 Trustee on various dates within the one year prior to the filing of the bankruptcy petition.  On March 24, 2018, Baker filed his Rule 2016(b) disclosure (ECF No. 24), in which he disclosed that he received $650.00 pre-petition for representation in the second case and "$400.00 on or about May 2, 2017 from the Debtor for outstanding fees for the prior case."  This disclosure is mostly consistent with the Statement of Financial Affairs; however, it states the May 2, 2017, payment of $400 was for "[l]egal fees [p]aid in [p]rior," apparently omitting the word "case."  However, Baker has been overpaid in the first filed case by $400.00.[3]  At the hearing held on March 27,

---

[2] Debtor's counsel filed an Application for Approval of Fixed Fee Agreement (ECF No. 31) in case number 17-32841.  Counsel requested and was paid by the Trustee pursuant to paragraph 3A, which states the following: "I have agreed to a fixed fee (including all expenses except reimbursement of the filing fee) in the amount of $3,825.00. I have received $400.00 for representing the Debtor(s) in this case. Therefore, the balance due from the trustee as an administrative expense is $3,425.00. **I agree that if the case is dismissed before the plan is confirmed or less than 120 days after confirmation, the maximum fee allowed under this provision is $3,425.00.** If the chapter 13 plan is not confirmed by the conclusion of the first confirmation hearing that occurs after the non-governmental claims bar date, then I agree that the fee will be reduced by $300.00."

[3] Baker received $3,435 from the Chapter 13 Trustee, but the debtor's case was dismissed prior to confirmation on November 21, 2017.  Accordingly, the Trustee should only have paid Baker $3,035 because the debtor paid Baker a $400 retainer.  Neither Baker nor the Trustee account for this overpayment and Baker owed the debtor $400 when he filed the debtor's second case and when he received a disclosed retainer of $650 from the debtor on March 2, 2018.

2019, Baker testified upon cross-examination that he had, in fact, received payment for unpaid attorney fees related to the first case after dismissal of that case and prior to the filing of the second case. This testimony was inconsistent with the 2016(b) Statement and the Statement of Financial Affairs filed in the second case. That testimony was not true, and while Baker has regularly received payment for unpaid attorney fees related to prior case filings with other debtors after dismissal but prior to filing of successive cases, it did not occur in this case. Baker's testimony acknowledges this fact; however, he was misinformed as to his actions in the Contreras case, where it did not occur.

Mr. Contreras refiled bankruptcy to save a property he inherited, which is located at 809 Sunset Drive, Baytown, Texas 77520. Baker testified that Mr. Contreras informed him this property had been paid off through his father's life insurance. To support his claim, Mr. Contreras presented a document to Mr. Baker that appeared to be printed from a computer. Based on this evidence, Baker testified that he filed an adversary proceeding (Case No. 18-3255) against Rushmore Loan Management Services LLC and nine other financial institutions, on August 20, 2018, to contest their interest in the property and to contest how the alleged life insurance funds had been applied to the mortgage loan. During the adversary proceeding, Baker testified that the defendants were able to present proof that the life insurance policy in question had not in fact paid off the loan. This Court signed an agreed order dismissing the adversary proceeding on November 28, 2018 (Case No. 18-3255, ECF No. 26).

The Chapter 13 Trustee has argued that Baker should have known the adversary proceeding would be of little or no benefit because most of the claims were barred by the Texas statute of limitations. On cross examination, it became clear that Baker had not performed sufficient due diligence to determine the veracity of the claims before initiating the adversary

proceeding.  Baker testified that the reason he filed the adversary proceeding because "the debtor wanted us to do this."  (ECF No. 79, pg. 15, line 9.)   Instead, Baker filed the adversary proceeding based solely on his client's representations and a computer printout.  That computer printout, which was not introduced into evidence, only showed that an insurance premium was being paid when the mortgage loan was executed in 2001; it did not show whether insurance was actually in place when the debtor's father died.  Baker made no mention of any investigation he performed to determine whether any of the claims had any merit.  If Baker had performed minimal investigation, he likely would have easily discovered that there had been no life insurance policy in place when the debtor's father died, and therefore no life insurance funds were disbursed to be applied to the mortgage loan.  In addition to this, it is arguable that some or most of the claims, including the breach of contract claim, in the adversary proceeding were barred by the Texas statute of limitations.  This adversary proceeding provided no benefit to the debtor or the bankruptcy estate.  Further, Baker did not perform sufficient due diligence to determine whether the adversary proceeding reasonably could have benefited the debtor or the estate.

In the 2017 case, Baker filed a Fixed Fee Agreement in the amount of $3,825.00. (Case No. 17-32841, ECF No. 31).  Baker also attempted to file a Fixed Fee Agreement in the present case, but his application was denied as untimely. (ECF No. 40).  As a result, Baker billed this case on an hourly fee basis.  In this refiled case, from February 23, 2018, through February 26, 2019, Baker's fees total $13,097.00, which includes the fees in the main case ($4,681.00) and the fees from the adversary proceeding ($8,416.00). (ECF No. 71-4). The adversary proceeding was dismissed as was the debtor's main case before confirmation.  He seeks a total of $12,943.58

after deduction of the debtor's March 2, 2018, payment of $650.00.[4]   Baker's fee application does not account for the overpayment in the debtor's prior case of $400.00.

The Court notes three important facts.  First, over two unsuccessful bankruptcy cases and one unsuccessful adversary proceeding, Baker has sought fees totaling $16,522.00 and has been paid $4,475.00.  Second, irrespective of the time Baker and his law firm have billed, neither the debtor nor the bankruptcy estate have received much benefit from the work Baker has performed.  Third, twelve different people, including Baker, billed on this case.  Baker does not employ secretarial staff, so paralegals bill for secretarial tasks.  No task is billed below a $100 rate. (ECF No. 71). This raises issues concerning duplication of effort and billing for clerical tasks.   As this case was dismissed before confirmation, no plan was confirmed and no distributions to unsecured creditors will occur.

**James Curry (Case No. 16-34693)**

Baker filed this Chapter 13 bankruptcy petition on behalf of debtor James Curry on September 21, 2016.  The Court confirmed Mr. Curry's plan on May 16, 2017 (ECF No. 63).  A modification of the confirmed plan was approved (ECF No. 111) on June 14, 2018.  The confirmed plan, as modified, provided for a total of $5,835.00 in attorney fees to Baker & Associates, of which $3,735.00 had been previously disbursed pursuant to a fixed fee agreement (ECF No. 99).  It also estimated approximately $3,548.87 available for general unsecured claims.

On March 11, 2019, Baker filed a Chapter 13 Fee Application (ECF No. 115) in the total amount of $3,808.88.  He has requested that 100% of these fees and expenses be paid to him through the Chapter 13 plan.  To date, Baker has been paid $3,735.00 in fees through the Chapter 13 plan pursuant to a fixed fee agreement.   Seven different people, including Baker, billed on

---

[4] Expenses that are not in dispute are included in this total.

this case.   Further, because Baker does not employ secretarial staff, paralegals billed for secretarial tasks.[5]   All paralegal tasks were billed at a $105 rate. (ECF No. 115.)   These facts raise issues of duplication of effort and billing for clerical tasks.

**David and Heather Campbell (Case No. 16-35750)**

Baker filed this Chapter 13 bankruptcy petition on behalf of debtors David and Heather Campbell on November 18, 2016.   The Court confirmed debtors' Chapter 13 plan on April 18, 2017 (ECF No. 51).   A modification of the confirmed plan was approved on March 9, 2018 (ECF No. 73).   The Court approved another modification of the plan on August 22, 2018 (ECF No. 88).   The confirmed plan, as modified, provides for a total of $7,235.00 in attorney fees to Baker & Associates, of which $3,544.00 had been previously disbursed pursuant to a fixed fee agreement. It also estimated approximately $6,444.40 available for general unsecured claims. On February 6, 2019, Baker filed a Chapter 13 Fee Application (ECF No. 93) for post-confirmation fees in the total amount of $2,790.73.   On March 4, 2019, this Court entered an order (ECF No. 97) denying the Chapter 13 Fee Application.   On March 6, 2019, Baker filed a Second Chapter 13 Fee Application (ECF No. 98) for post-confirmation fees in the total amount of $2,097.46.   Nine different people, including Baker billed on this case.   Baker does not employ

---

[5] For example, on December 28, 2017, there are two time entries for a Plan Modification.   Reese Baker charged 24 minutes at $365 per hour and Katherine Wright charged 3 hours, 6 mins.   This is a total of 3.5 hours.   The Court finds that Ms. Wright charged the debtor for the typing of the modification at $105 per hour.   The Court finds this total time charge to be excessive.   The work performed by Baker and Wright that is strictly legal, and not secretarial, would expend only total 1.5 hours for this particular task.   Due to the increased reliance on the word processor, some courts have allowed word processing as a separately allocable expense. *In re Jensen-Farley Pictures, Inc.,* 47 B.R. 557, 585 (Bankr. D. Utah 1985). Other courts find that it is no different than other work done by support staff and is part of the office overhead. *In re Churchfield Mgmt. & Invest. Corp.,* 98 B.R. 838 (Bankr. N.D. Ill 1989); *In re D'Lites of America Inc.,* 92 B.R. 554 (Bankr. N.D. Ga. 1988).   The Court believes that the latter cases are correct and expenses for word processing will not be allowed absent most compelling and well documented circumstances. *In re Bank of New England Corp.*, 134 B.R. 450, 456 (Bankr. D. Mass. 1991).

secretarial staff, so paralegals billed for secretarial tasks.[6]  Most paralegal tasks were billed at a

$105 rate. (ECF No. 115).  This raises issues of duplication of effort and billing for clerical tasks.

**Wanda Hubbard (Case No. 18-33054)**

Baker filed this Chapter 13 bankruptcy petition on behalf of debtor Wanda Hubbard on

June 4, 2018.  The Court confirmed debtors' Chapter 13 plan (ECF No. 43) on December 7,

2018.  The confirmed plan provides for a total of $5,100 in attorney fees to Baker & Associates.

It also estimates approximately $13,431.00 available for general unsecured claims.  On March 7,

2019, Baker filed a Chapter 13 Fee Application (ECF No. 53) for fees totaling $4,061.50.   Ten

different people, including Baker, billed on this case.  Baker does not employ secretarial staff, so

paralegals are billing for secretarial tasks.[7]  All paralegal tasks were billed at a $105 rate. (ECF

No. 115.) This raises issues of duplication of effort and billing for clerical tasks.

<u>**THE TRUSTEE'S OBJECTIONS**</u>

The Chapter 13 Trustee filed objections to each of Baker's fee applications, and each

objection raises similar issues.  In the Contreras, the Trustee alleges that: (a) billing records that

reflect that paraprofessionals performed clerical or secretarial services such as reviewing the

Trustee's website and reviewing dockets, which may not be compensable; (b) the billing records

reflect paraprofessionals and attorneys performed what appear to be duplicative tasks; (c) the

---

[6] For example, on 11/2/2017, Gabby Martinez billed 12 minutes for processing a change of address, which is a secretarial task.  Then, on 1/9/2018, Katherine Wright billed a total of 36 minutes for preparing an amended I and J (ECF No. 64-2), which is a task that should not require this much time.  On 1/23/2018, Katherine Wright billed for mailing a modification, which is a secretarial task.  Beginning on 1/30/2018, there was billing on an amended modification (ECF No. 69) filed 2/20/18 that totals 168 minutes.  This billing is grossly excessive and includes secretarial services.

[7] For example, on 3/29/2018 Katherine Wright billed 36 minutes for tasks, including input case, which is the secretarial task of typing information into a bankruptcy petition software program.  On 4/12/2018, Amanda Ginesta-Osuna billed 12 minutes to collect documents, which is a task easily performed by secretarial staff.  On 5/29/2018, Angie Dupue billed 26 minutes for tasks including case filing, which can also be handled by secretarial staff.  On 6/28/2018, Angela Harpin billed 12 minutes for communication with 1st Service Credit Union, which could be as simple a task as providing a creditor a case number or hearing dates.

billing records show $335.00 per hour for Rick Carter, an individual identified as a "Contract Attorney," which is excessive for a contract attorney; (d) that an adversary proceeding filed in the case was unnecessary, and that the fees billed were excessive because the adversary proceeding provided little or no benefit to the estate; (e) as a board-certified attorney, Baker should have known the adversary was frivolous with reasonable inquiry into the matter before filing; and (f) the total fee requested is unreasonable as it exceeds the amount reasonably necessary for the work required to be performed and exceeds the prevailing rate for similar work.

In *Curry*, the Trustee alleges the following: (a) billing records that indicate charges for deficient filings that were either denied or needed to be amended; (b) Baker, as a board-certified attorney, should be held to a higher duty of care and should be expected to have a greater experience level than attorneys who do not hold a board certification; (c) that the total fee requested is unreasonable as it exceeds the amount reasonably necessary for the work required to be performed to date and that it exceeds the prevailing rate for similar work; and (d) that the small return to general unsecured claims should not be further diminished to provide for these excessive fees.

In *Campbell*, the Trustee alleges the following: (a) billing records that reflect that paraprofessionals performed clerical or secretarial services such as reviewing Trustee's website and reviewing dockets, which may not be compensable; (b) billing records that indicate charges for deficient filings that were either denied or needed to be amended; (c) the billing records reflect paraprofessionals and attorneys performing what appear to be duplicative tasks; (d) Baker, as a board-certified attorney, should be held to a higher duty of care and should be expected to have a greater experience level than attorneys who do not hold a board certification; and (e) that the total fee requested is unreasonable as it exceeds the amount reasonably necessary

for the work required to be performed to date and that it exceeds the prevailing rate for similar work.

In *Hubbard*, the Trustee alleges that: (a) the billing records reflect paraprofessionals and attorneys performing what appear to be duplicative tasks; (b) billing records that indicate charges for deficient filings that were either denied or needed to be amended; (c) Baker, as a board-certified attorney, should be held to a higher duty of care and should be expected to have a greater experience level than attorneys who do not hold a board certification; (d) that the total fee requested is unreasonable as it exceeds the amount reasonably necessary for the work required to be performed to date and that it exceeds the prevailing rate for similar work; and (e) that the small return to general unsecured claims should not be further diminished to provide for these excessive fees.

## THE LEGAL STANDARD

Section 330(a)(4)(B) of the Bankruptcy Code provides the following:

In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

The other factors set forth in § 330(a)(3) include the following:

[T]he nature, the extent, and the value of such services, taking into account all relevant factors, including (A) the time spent on such services; (B) the rates for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue or task addressed; and (E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

The Supreme Court and the Fifth Circuit Court of Appeals have clearly held that the lodestar method of fee calculation is the method by which federal courts should determine reasonable attorney fees under federal statutes which provide for such fees. *See, e.g.*, *Pennsylvania v. Delaware Valley Citizens Council for Clean Air*, 483 U.S. 711 (1987) (lodestar method used to calculate fees under Clear Air Act); *Hensley v. Eckerhart*, 461 U.S. 424, 433–34 (lodestar method used to calculate fees under 42 U.S.C. § 1988); *Shipes v. Trinity Indus.*, 987 F.2d 311 (5th Cir. 1993). The lodestar is computed by multiplying the number of hours reasonably expended by the prevailing hourly rate in the community for similar work. *Id.*

In evaluating attorney fee applications under the lodestar method, the Court routinely reviews the following factors:

a. Time charges;

b. Hourly rates;

c. If services are timely performed;

d. The reasonableness of charges based on the customary compensation charged by other skilled bankruptcy practitioners;

e. If there is duplication of effort;

f. If there is sufficient information in the fee application;

g. If there is charging for clerical work or ministerial tasks including typing, file organization, making appointments, ECF filing documents, word processing, proofreading, secretarial services;

h. If there are repetitive entries in billing, without cause;

i. If billing is contemporaneous or if billing is by a fixed time entry for a standard event;

j. If the summary by name (timekeeper), total fees billed, current hourly rate, and rate changes;

k. If there is a specific breakdown of expenses;

l. If counsel is time efficient.

Because the applicant in this case uses paralegals or secretaries, the Court also takes the following factors into consideration:

a. The services performed must be legal in nature rather than clerical. Most of the case law around the country suggests that "ministerial tasks" (typing, file organization, document preparation, searching or filing documents on PACER, etc.) performed by a professional or paraprofessional should not be allowed as a separate charge because it is part of the office overhead, which should already be built in the counsel's hourly rate. *In re Dimas, LLC*, 357 B.R. 563, 577 (Bankr. N.D. Cal. 2006).

b. The application must show that the work performed by the lawyer could not have been performed by the secretarial staff.

c. Services performed by an attorney or paralegal which could have been performed by a legal secretary should be billed at a lower rate. The Supreme Court has said the following: "[o]f course, purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them." *Missouri v. Jenkins*, 491 U.S. 274, 288 (1989). In *Johnson v. Georgia Highway Express, Inc.*, the Fifth Circuit states the following: "legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available.

Such non-legal work may command a lesser rate.  Its dollar value is not enhanced just because a lawyer does it."  488 F.2d 714, 717 (5th Cir. 1974).

One of the first and most well-known tests of reasonableness was set forth by the Fifth Circuit in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974).  Therefore, in determining a fee award, this Court routinely uses the twelve factors, known as the "*Johnson* factors," as a guideline in determining fee awards.  These factors include the following:

(1) the time and labor required;

(2) the novelty and difficulty of the questions;

(3) the skill requisite to perform the legal service properly;

(4) the preclusion of other employment by the attorney due to acceptance of the case;

(5) the customary fee;

(6) whether the fee is fixed or contingent;

(7) time limitations imposed by the client or the circumstances;

(8) the amount involved, and the results obtained;

(9) the experience, reputation, and ability of the attorneys;

(10) the "undesirability" of the case;

(11) the nature and length of the professional relationship with the client; and

(12) awards in similar cases.  *Id*.

## THE CREDIBILITY OF THE WITNESS

Baker testified in support of his fee applications.  The Court finds Baker was not credible.  This finding is based on factors discussed in this opinion.  It is also based on Baker's testimony regarding various charges in the applications.  Several of these charges are glaringly false and are

present in each case.  While portions of the applicant's testimony appear truthful, his truth and veracity were severely impeded by several significant misstatements as well as the overall clearly excessive billing in each case.

One misstatement included his testimony regarding billing of 1.1 hours for filing an amended plan and schedules in the *Hubbard* case.  Other than the additions of the words "amended" and "cove," the amended plan and schedules are identical to previously filed documents.  The preparation of these amended documents is a clearly simple task.  It only involved taking an already existing document, adding three words to it, printing and redlining it.  With computer software, this task should have taken no more than five minutes.   Even an inexperienced paralegal should have taken no more than ten minutes to complete this entire task.  However, the applicant billed 1.1 hours for this task.  More importantly, Baker represented to the Court that his staff is highly trained and efficient and that this billing was an accurate reflection of time spent on this task.  These representations were clearly false.

Like the other cases, the application in the *Hubbard* case includes inflated billing, and billing that reflects extreme inefficiency.  Baker's fee applications, including those in these four cases, are routinely the highest the Court sees in all its Chapter 13 cases.  This Court has extensive experience in Chapter 13 cases, both as a practicing lawyer and former Chapter 13 Trustee.  The fees sought by the applicant strain credibility.  The applicant's law firm appears to bill more and take longer to do any task in a Chapter 13 than other law firm in the Houston, Galveston and Victoria Divisions of the Southern District of Texas, the Shreveport Division of the Western District of Louisiana, and the Columbus Division of the Southern District of Ohio.  These are locations where this judge previously practiced or served as a Chapter 13 Trustee or bankruptcy judge.  If the time in these applications is not inflated, then the services provided are

clearly not being provided in a time efficient manner. Fee application hearings must be based on the belief that the testifying witness is truthful and credible. The Court cannot make that finding in these cases and finds that Baker is neither truthful nor credible.

In addition, Baker has represented that work in these cases was reasonable based on the customary compensation charged by other skilled bankruptcy practitioners. On this point, the Court stresses that Baker is a skilled bankruptcy practitioner; he is Board Certified by the Texas Board of Legal Specialization in both Consumer and Business Bankruptcy Law (Case No. 18-30995, ECF No. 71-5). This Court, therefore, holds him to a higher duty of care as he represents a greater experience level than attorneys who do not hold a board certification. Yet, he filed an adversary proceeding in the Contreras case that clearly involved claims barred by the statute of limitations and then sought $8,416.00 in compensation for work that could have never benefited the debtor or the bankruptcy estate.

In his testimony, Baker stated the following:

So, I thought – I believe very clearly he had a reasonable basis for going forward with the information I have been provided. We tried to get information from the lenders before we took any action on it. They did not provide anything for us. So, based upon what I had and what I – what the client was telling us and what it seemed at the time to be a believable story, we went forward. As it turned out, it was not the story that he thought it was. But I can't – you know, I can't do anything about that. I believe that based on, again, what I had and what looked to be the situation that it was a reasonable basis to go forward on. And so, I believe that the work we did was beneficial to him, if, in fact, what he believed and what he told us was true that the loan had been paid off, then it may well have – it would have been a very different outcome, because he would have owned the house without having any money owed on the house.

Additionally, under cross-examination by the Trustee regarding the time-barred claims, Baker testified as follows:

Q Did you notice that some of your claims were time barred?
A Uh- ---
Q In fact, the majority were time barred.

A Well, I don't know – this case was filed because of the insurance issue. We probably had other claims involved in it. But I mean, the only – the principal reason this case was filed is because the debtor came to us, said, I've got – my father had insurance on the property; the insurance paid it off; Beneficial told us, here's the information on it, and that's when we went forward on it.

Q So, is it your testimony today that filing cases based on the debtor saying he has insurance is worth in excess of $18 thousand?

A In this case, I believe it was, because the – the debtor – first of all, the debtor wanted us to do this. He agreed to do it. He provided us the documentation showing what was going on. He said, he and his mother had been there and talked to them, and I recall that we reached out. And I don't remember the – if we missed it in our time records, we missed it, but I recall reaching out trying to get the information from the lenders on that before we actually filed the Adversary. We may not have done that before we filed the main case, because I think he had a foreclosure coming up.

The complaint in the adversary case (Case No. 18-03255, ECF No. 1) clearly states "[p]laintiff's father, Gilbert Contreras died on or about January 3, 2009."  Therefore, Baker clearly had knowledge of the date of the debtor's father's death.  Assuming the maximum four-year statute of limitation period for a claim against a contractual life insurance policy, some of the debtor's claims expired on January 2, 2013.  This was more than five years before Baker's law firm filed the adversary.  Yet, Baker testified, "I believe very clearly he had a reasonable basis for going forward with the information I have been provided."  These representations are either false or grossly misleading.  While these statements were probably made in haste during cross-examination to support his fee application, these misstatements seriously impugn Baker's credibility with respect to each of the instant fee applications.  Further, as the Court has already discussed, there is no evidence Baker conducted any investigation or performed any due diligence to determine the veracity of the claims before filing the adversary proceeding.

## **FINDINGS OF FACT**

The four cases addressed in this opinion demonstrate a systematic billing pattern that is troubling.  By submitting these billing records to the Court, Baker has certified that, to the best of

his knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the billing is not being presented for an improper purpose. However, all the applications exhibit rampant duplication of effort. This problem is due in part to the sheer number of individuals working on each single case. Up to twelve individuals bill on the fee applications in a single case. Firm lawyers Reese W. Baker, Sonya L. Kapp, Nikie Lopez-Pagen, contract lawyer Rick Carter, and paralegals Katherine Wright, Amanda Ginesta-Osuna, Angie Duque, Gabby Martinez, Jennifer Hunt, Angela Harpin, Dee Wright, and Tammy J. Chandler bill on these cases. The firm does not have any secretarial staff. Therefore, Baker's paralegal staff performs significant secretarial work such as typing pleadings, petitions and schedules. Just because Baker has paralegals performing secretarial work does not make that work compensable.

The Court notes that, in the context of Chapter 13 cases, the number of individuals Baker has billing on a single simple Chapter 13 case is extremely rare. In fact, this Court is not aware of any other law firm using or needing this many people to work on a single Chapter 13 case. This Court has not seen any other consumer bankruptcy case with more than four individuals billing; indeed, even four individuals billing on a case is rare. The Court also notes that the total number of people billing on this case exceeds many of this Court's medium sized Chapter 11 cases. One bankruptcy court made the following analysis of the inherent problems with having a high number of individuals working on a single Chapter 13 case:

> The first concern of the Court involved the number of billing units that had been assigned to the file. Twenty-nine different people billed time to the file. The Court expressed concern that this practice necessarily created systemic inefficiency and duplication of effort. The Court observed that all 29 people assigned to the case could not help but to bill time to the file . . . . The Firm argued . . . that its time records reflected "very little" duplicative services and that the services that were duplicative were at least partially accounted for in the Firm's reduction in its fee request. But the Court's concern runs deeper than this response would suggest. Take for example the two amendments that were made to schedule F. Nine different people billed time to this project category, none of

whom appear to have been involved with the preparation of the original schedule. If there had been more consistency in the representation, perhaps the need to file two amendments to the same schedule could have been avoided. Certainly, the services of nine professionals were not required to add four creditors to an amended schedule . . . . It is one thing for the Firm to choose to represent its clients in this assembly line fashion devoting 20 to 30 people to a routine case; it is entirely another for the Court to reward the systemic inefficiency it creates by awarding compensation on this basis. *In re Grubb*, 2009 Bankr. LEXIS 4083, *25–28 (Bankr. E.D. Va. 2009).

This Court agrees with this analysis.

**Mark Contreras**

The Court sustains the Trustee's objections to the fee application in *Contreras* case. First, the Court notes that this was a refiled case. Baker filed the debtor's previous case (Case No. 17-32841), which was dismissed prior to confirmation. When a case is refiled by the same firm, the information from the original filing can be cloned or copied by bankruptcy software to use for the new case. In addition, Baker and his firm should have knowledge of the debtor's situation, including his assets and debts, since they had so recently represented him in a prior case. Baker would have needed only to edit information that had changed from the prior case to the new case. However, between February 23, 2018, and the filing date of the petition on March 5, 2018, attorneys or paralegals spent 3.7 hours to file a petition (ECF No. 1), which was an exact copy of the petition filed in the prior case with the sole exception of the additional disclosure of the prior case. This billing is blatantly excessive.

Following that claimed 3.7 hours of billing, Baker and his firm claim an additional 5.5 hours before the debtor filed his complete schedules on March 16, 2018 (ECF No. 10). The Court compared the schedules filed in this case with the schedules filed in the debtor's previous case (Case No. 17-32841, ECF No. 13). The schedules filed in the instant case are 53 pages long, while the schedules filed in the previous case are 55 pages long. They are sufficiently

similar that some time should have been saved in the second case for schedule preparation, reviewing, and filing.  However, there was no time savings.  The total time Baker and his firm spent in preparing the pleadings prior to filing the schedules on March 16, 2018, is 9.2 hours.  This is clearly excessive.  The time is either inflated or the services were provided in an extremely inefficient manner (or both).  Between March 5, 2018, and March 16, 2018, there are the following seven docket entries relating to the 9.2 hours billed by the applicant: (a) the Chapter 13 Voluntary Petition (ECF No. 1), which a paralegal could have cloned or copied from the prior case, updated, had the debtor sign, and then filed within .3 hours; (b) the credit counseling certificate (ECF No. 2) that requires no attorney preparation and could be reviewed in .1 hour and filed by secretarial staff; (c) the proposed wage order (ECF No. 3), which is a duplicate of the order filed in the previous case (Case No. 17-32841, ECF No. 3) and could have been copied, prepared, and filed in .1 hours; (d) the complete schedules (ECF No. 10), which are sufficiently similar to the schedules in the prior case that a client meeting could be have been held, information processed, the schedules updated, then signed by the debtor and filed with the Court in one hour; (e) the Chapter 13 Plan (ECF No. 11), which could have been prepared, reviewed, and filed in .5 hours; (f) the amended wage order (ECF No. 12), which is an exact copy of a prior wage order except for the amount and could have been copied, prepared, and filed in .1 hour; and (g) the payment advices (ECF No. 14), which could have been copied, reviewed, and filed in .3 hours.  Based on this analysis, Baker has billed 9.2 hours for tasks this Court would expect to be completed in 2.4 hours.  The application demonstrates obvious time inefficiency, and the Court finds this billing clearly excessive.   Importantly, Baker's representations that his billing represents the actual time spent on these tasks or that the work in

these cases was reasonable based on the customary compensation charged by other skilled bankruptcy practitioners are determinative in this Court's finding that Baker was not credible.

The Court's time estimates are based on its prior actual preparation of the documents for which the applicant seeks compensation.  The estimates are also supported by a prior *en banc* opinion of the Bankruptcy Judges for the Southern District of Texas.  On October 3, 2006, the Southern District of Texas issued a Memorandum Opinion and Order Amending Local Procedures for Chapter 13 Fee Applications.  *In re Chapter 13 Fee Applications*, No. 06-00305, 2006 Bankr. LEXIS 2710 (Bankr. S.D. Tex. 2006) ("Fixed Fee Memorandum").  In summary, the Fixed Fee Memorandum provides that a Chapter 13 debtor's counsel can be compensated on a "fixed fee" (i.e. a "pre-calculated lodestar" fee) or on an hourly basis.  It sets forth a list of services that debtor's counsel must perform to claim a fixed fee.  The Fixed Fee Memorandum also allows debtor's counsel to elect a fixed fee for certain post-confirmation Chapter 13 services.   The fixed fee schedule eliminates the need for debtor's counsel to keep contemporaneous time records because the fixed fee is a precalculated lodestar.  The fixed fee is popular with the consumer debtor bar because it eliminates the need for time records.  Attorneys choose the fixed fee in the clear majority of Chapter 13 cases.   The "fixed fee" has been gradually increased over time.  In 2006, the maximum fixed fee for a Chapter 13 case was $3,085.00.  The fixed fee was last increased on December 1, 2017, to $4,500.00 for a standard case and $5,600.00 for a non-standard case.[8]

This Court is currently assigned approximately 3,000 Chapter 13 cases.  The Court finds the "fixed fee" has become the prevailing or customary rate for legal services in consumer

---

[8] The forms for the application of a fixed fee in a Chapter 13 case are available on the Southern District of Texas Bankruptcy Court website at https://www.txs.uscourts.gov/sites/txs/files/ch13feeapporder.pdf (last visited April 21, 2019).  They describe the scope of the services to be provided by debtor's counsel and how a Chapter 13 case is classified (i.e., as a standard case or a non-standard case).

Chapter 13 cases.  Indeed, there generally have been less than 20 Chapter 13 fee applications filed per month in this Court.  Since the recent increase of the "fixed fee" to $4500, the number of fee applications has decreased substantially to less than 10.  The Fixed Fee Memorandum lists estimated time obligations for attorneys representing Chapter 13 debtors.  The following is a breakdown of the time estimates contained in the Fixed Fee Memorandum:

| Category | Estimated Attorney Time | Estimated Paralegal Time |
|---|---|---|
| **Prepetition client consultations** | 1.5 | 1.5 |
| **Postpetition client consultations** | 0.7 | 1.0 |
| **Schedules and plan** | 1.0 | 3.0 |
| **Amendments** | 0.7 | 0.5 |
| **Section 341 meeting** | 1.0 | 0.0 |
| **Creditor contacts** | 0.3 | 0.5 |
| **Proof of claim review** | 0.1 | 0.6 |
| **Responding to Trustee motions to dismiss** | 0.2 | 0.0 |
| **Responding to motions for relief from the stay[8]** | 0.3 | 0.0 |
| **Plan confirmation** | 0.3 | 0.0 |
| **Post confirmation matters** | 0.3 | 0.4 |
| **Total** | 6.4 | 7.5 |

It states that 6.4 hours of attorney time and 7.5 hours of paralegal time is typical in a standard Chapter 13 case.  The applicant consistently exceeds these estimates.

Additionally, Rick Carter, who is a contract attorney, bills at $335 per hour in these applications.  The Court finds this rate excessive for a contract attorney, especially since Baker's firm only paid Mr. Carter $50 for his contract appearance.  The Court finds Mr. Carter's contract rate for fee applications should be $100 per hour, if he is charging a flat $50 to Baker to appear.

The Court disallows all billing for the unnecessary adversary proceeding filed in connection with this case.  The adversary proceeding provided no benefit to the debtor or the

bankruptcy estate.   As a board-certified attorney, Baker should have known with reasonable inquiry the adversary was frivolous.   Even if the adversary proceeding had been beneficial, the fees billed in connection with that proceeding were excessive.

**James L. Curry**

The Court sustains the Trustee's objections to the fee application in *Curry* case.   The billing records indicating charges for deficient filings that were either denied or needed to be amended Baker, as a board-certified attorney, should be held to a higher duty of care and should be expected to have a greater experience level than attorneys who do not hold a board certification.   Therefore, these deficient filings are not compensable.

In the *Curry* case, Baker's testimony and the Court's docket demonstrate that Baker and his firm muddled through the bankruptcy process during the period for which he seeks compensation—that is between October 13, 2017, and November 14, 2018.   There were numerous deficient filings and errors by Baker and his firm.   For example, on December 28, 2017, Baker filed a Motion to Modify Chapter 13 Plan (ECF No. 73).   There were then three subsequent amended or corrected motions to modify (ECF Nos. 85, 86, and 99), and six hearing dates set, before final approval.   An applicant who is board-certified in consumer bankruptcy law should be held to a higher legal standard, especially when that certification entitles the applicant to a higher billing rate.   The debtor, the bankruptcy estate, and the unsecured creditors should not be required to pay for numerous corrections of errors.   The fees requested for a single modification of the debtor's plan far exceeds the amount reasonably necessary for the work required to be performed.

The applicant's errors in all the cases discussed in this opinion cause increased billing on other activity in the case.   For example, if an amended modification requires a plan payment

change, the payment change the requires at least an amended budget and amended wage order.  It also may require a client consultation.  Therefore, the applicant's errors become magnified in the billing because the time is spent not only on amending deficient modifications but also doing the other required work that would always be incidental to the amended modification. These deficient filings are not compensable.

**David and Heather Campbell**

The Court sustains the Trustee's objections to the fee application in *Campbell* case.  The billing records reflect that paraprofessionals performed clerical or secretarial services such as reviewing the Trustee's website and reviewing dockets, which are not compensable tasks.  Also, the billing reflects non-compensable charges for deficient filings that were either denied or needed to be amended.   Still further, the charges reflect paraprofessionals and attorneys performing what appear to be duplicative tasks, which are not compensable as to the duplicative time.

In the *Campbell* case, the record again reflects errors made by the applicant for which he expects to be compensated.  The time period covered by the fee application is October 27, 2017, to January 1, 2019.  On January 9, 2019, the Court held a hearing and the debtor was given 14 days to file a plan modification.  The modification was filed on January 22, 2018 (ECF No. 64), then amended on February 20, 2018 (ECF No. 69), and then was approved on March 9, 2019 (ECF No. 73).  Unfortunately, due to an attorney error in the modified plan, as approved, the modification had to be filed again, and it was then finally approved by the Court.  Again, in this case, the applicant who is board-certified in consumer bankruptcy law, seeks compensation for the time spent correcting his own errors.  Therefore, these deficient filings are not compensable.

**Wanda Hubbard**

The Court sustains the Trustee's objections to the fee application in *Hubbard* case.  The billing records reflect paraprofessionals and attorneys performed non-compensable duplicative tasks.  The billing records also reflect charges for deficient filings that were either denied or needed to be amended.

In the *Hubbard* case, the debtor filed an amended plan on October 18, 2018 (ECF No. 33), as well as amended schedules A and B (ECF No. 34).  The plan amended a prior Chapter 13 plan filed on September 18, 2018 (ECF No. 22).  The redlined amended plan consisted of three additional words.  The added words were "amended" on page one, "cove" on page four (which is a correction to a property address), and "amended" on Exhibit A to the plan.  There are no other changes to the plan.  Likewise, the amended schedules add the word "cove" to match the changes to the plan.  These are simple changes that could have been easily performed by secretarial staff.  Even assuming a paralegal was required to change an incorrect address, this is a task that should have been completed in less than ten minutes.  The following is the summary of billing for the addition of the word "cove" in the amended plan and schedules:

| Time Entry | Billed By | Rate | Hours | Sub |
|---|---|---|---|---|
| Schedules, Plan<br>10/17/2018<br>prepared amended plan per trustee's request, called POA regarding signing documents | Angela Harpin | $150.00 | 0.40 | $60.00 |
| Amendments<br>10/18/2018<br>review of amended schedules and plan for filing | Sonya L Kapp | $365.00 | 0.10 | $36.50 |
| Schedules, Plan<br>10/18/2018<br>reviewed POA's paysubs and reviewed amendments for accuracy (0.4); emailed trustee regarding amendments(0.2) | Angela Harpin | $150.00 | 0.60 | $90.00 |

Baker billed 1.1 hours, for a total fee of $186.50.

On October 22, 2018, the debtor filed another amended plan (ECF No. 35).  The redlined amended plan added "amended' to the first page of the plan, added the phrases "First Service Credit U" and "Secured Credit Card" on page 3, and "amended" on Exhibit A to the plan.  There are no other changes to the proposed plan.   The following is the summary of billing for the addition of these four words or phrases:

| Amendments 10/22/2018 review of further revised amended plan for filing | Sonya L Kapp | $365.00 | 0.20 | $73.00 |
| --- | --- | --- | --- | --- |
| Schedules, Plan 10/22/2018 call with trustee regarding 1st Service credit union claim; amended plan (0.3) call/emailed amendments to debtor (0.2) reviewed plan, emailed trustee (0.3) | Angela Harpin | $150.00 | 0.80 | $120.00 |

A total of 1 hour, or 15 minutes per word or phrase, was expended.  This work is more capably performed by a paralegal rather than a secretary.   Unlike the previous amendments, these amendments require the debtor to surrender undescribed assets to a secured lender.  However, even though this amendment is more substantive, it should have been a relatively simple amendment to complete.  The time Baker billed for this amendment is clearly excessive.

These amended plans are computer driven.  They were printed from a computer program that would have only required typing the words or phrases into software, then printing and redlining the documents.  These are tasks that could easily have been performed in less than ten minutes per amendment.  Yet, the applicant billed over two hours for these simple tasks.

This duplicative billing is illustrated by the following time records. On February 23, 2018, Reese W. Baker billed for drafting a power of attorney.  This billing was bundled with other tasks, for a total of 1.4 hours.  The bundled billing of these tasks is problematic in and of itself.  However, individuals continued billing for work on the power of attorney with paralegals Katherine Wright on May 7, 2018, Angie Duque on May 29, 2019, and again with Katherine

Wright on June 4, 2018.  In fact, this final billing indicates Katherine Wright billed for drafting the power of attorney, even though it had already been drafted.

On September 31, 2018, two individuals prepared for the creditors meeting, which ended up being reset.  Staff lawyer, Sonya L. Kapp, billed .3 hours and then paralegal Dee Wright billed .2 hours.  This is duplicative, excessive, and unnecessary.  They both billed again on August 21, 18, and August 22, 2018, for preparing for a creditor's meeting for which they had already prepared for and billed.  This is duplication of effort and is excessive.

The Court is also concerned by the nature of the amendments in the *Hubbard* case.  It appears the amendments were necessary to correct the debtor's address in the plan and the bankruptcy schedules.  It is possible that the debtor failed to give the attorney the correct address.  However, attorneys should conduct due diligence prior to filing a case, especially as it relates to real estate.  An attorney cannot always rely on representations made by the client.  It is also possible the mistake was simply typographical—that is, Baker may have just accidentally typed in the wrong address.  Regardless, whether the mistake was due to a lack of due diligence or a typographical error, neither the debtor nor the estate should be required to pay such an excessive fee for such an amendment.

## **CONCLUSIONS OF LAW**

This Court has jurisdiction to enter a final order in this matter pursuant to 28 U.S.C. § 1334 and by virtue of the Order of Reference entered on May 24, 2012, by the United States District Court for the Southern District of Texas. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B).

Baker, as a board-certified attorney, should be held to a higher duty of care and should be expected to have a greater experience level than attorneys who do not hold a board certification.

He has not met this standard in these cases.  In applying the lodestar method of fee calculation to Baker's cases, this Court sees no reason that Baker should be compensated for prosecuting the adversary proceeding in the *Contreras* case, where the Court disallows the entire requested fee for the reasons already stated.

The Court has decided to grant either a lodestar fee based on its own review of the billing records or the allowed fixed fee pursuant to the Fixed Fee Memorandum, whichever amount is less.  The Court has decided to allow these fees, despite the deficiencies noted in this opinion, because Baker and his firm did provide benefit to the debtors and the estate.  This Court finds the following:

a.  Baker's time charges are unreliable and overstated;

b.  Baker's hourly rates are reasonable and customary;

c.  Baker did not always take timely action, which did not necessarily negatively affect the debtor but did lead to increased time charges;

d.  Baker's charges overall are not reasonable and not based on the customary compensation charged by other skilled bankruptcy practitioners;

e.  Baker and his firm engaged in consistent duplication of effort;

f.  The fee applications contain insufficient information to support the inflated time charges;

g.  Baker has billed for clerical work or ministerial tasks including typing, file organization, making appointments, electronic filing of documents, word processing, proofreading, and secretarial services;

h.  There are unjustified repetitive inflated entries in billing;

i.  Baker and his staff are not time efficient;

j.   The time spent by Baker greatly exceeds the time spent by other counsel in a typical Chapter 13 case;

k.   Baker performed unnecessary work;

l.   Baker's proposed fee amount substantially exceeds the customary compensation for comparably skilled bankruptcy practitioners;

m.   The cases were routine and uncomplicated;

n.   The fees were not contingent;

o.   Neither the cases nor the client imposed exceptional time constraints;

p.   The attorney-client relationship was not a factor in this case;

q.   The typical attorneys' fee award in similar cases would not exceed this allowed fixed fee.

The Court has taken extensive time and resources to review the fee applications in these cases.  However, the Court simply does not have the resources to do this on every fee application that is filed.   There were just under 240 time-entries in the four fee applications.  To determine reasonableness, the Court took time to match Baker's time-entries against its docket and reviewed documents that often exceed 50 pages.  While fee applications in Chapter 13 cases are not common, they are common in larger complex cases.   The Court simply does not have the resources to review every billing entry, compare it to the docket, and separate those entries insufficiently substantiated or documented.  Therefore, one court has taken a "rough justice" approach, which this Court adopts. *See In re Bank of New England Corp.*, 134 B.R. 450 (Bankr. E.D. Mass. 1991).   Rather than expending extensive court resources making line by line reductions for those entries that are insufficiently substantiated, this Court sets a fee based on "rough justice" as well as its own general knowledge and experience as to what constitutes a

reasonable attorney fee in a bankruptcy case for the services provided by the applicant. Therefore, as already discussed, the Court awards fees in this case in part on this "rough justice" approach.

Also, this Court should not have to guess or spend excessive court time to justify a fee when the applicant has not provided sufficient information or justification in the application. The Court will not audit time records to determine what was reasonable, what was necessary, and what the result was for each endeavor. *In re Chicago Lutheran Hosp. Assoc.*, 89 B.R. 719, 736 (Bankr. N.D. Ill. 1988). An applicant cannot simply throw time records at the Court to determine what sticks. Applicants have an absolute duty of candor and disclosure, which has not been met by Baker.

## **CONFLICT OF INTEREST**

Baker filed Mark Contreras' second Chapter 13 case on March 5, 2018. Baker also represented Mr. Contreras in his original bankruptcy case (Case No. 17-32841), filed on May 2, 2017. The Trustee has alleged that Baker collected a fee from Mr. Contreras for the first case prior to filing the second case. The Trustee argues this is a conflict of interest and Baker should not have represented Mr. Contreras in the second case. If Baker had received this alleged payment, then this Court agrees with the Trustee position that Baker's ability to represent Mr. Contreras in the second case possibly could be impaired and would prevent him from receiving compensation for the second case. However, it does not appear from the record that Baker received such a fee from the debtor.

Once a bankruptcy case is dismissed, any unpaid fees owed to an attorney are stripped of any priority status in future cases. If an attorney is a creditor in a bankruptcy case, that attorney cannot represent the debtor unless that conflict is waived pursuant to Texas Disciplinary Rules of

Professional Conduct.  Not only does counsel become a creditor in the new case, but counsel's receipt of such payment could be considered a preferential transfer in the refiled case.  Rule 1.06 prohibits an attorney from representing a client with interests adverse to the attorney without knowing consent by the client after full disclosure and only if the attorney reasonably believes that the conflict will not materially affect the representation.  If debtor's counsel conditions future representation in a new bankruptcy case on the debtor's payment of unpaid attorney fees, a conflict does materially affect the representation.  While courts do not typically extend the requirements of 11 U.S.C. § 327 to Chapter 13 debtor attorneys, most still recognize the state law requirements to address conflicts.

11 U.S.C.  § 547(b) allows for the avoidance of a preferential transfer that meet five criteria.  The transfer must be:

(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made—
    (A) on or within 90 days before the date of the filing of the petition; or
    (B) between ninety days and one year before the date of the filing of the petition, if such creditor   at the time of such transfer was as insider; and
(5) that enable the creditor to receive more than such creditor would receive if—
    (A) the case was a case converted to chapter 7 of this title;
    (B) the transfer had not been made; and
    (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

Nothing within 11 U.S.C. § 547 excludes attorney fees.  The Trustee argues Baker's receipt of a payment would have placed him in actual conflict with his client and this Court agrees.  *See In re Pantazelos*, 562 B.R. 723 (Bankr. N.D. Ill., 2016).  If Mr. Contreras paid Baker between the two cases, it most certainly would have been a preference.  The payment would have been an interest of the debtor in property, paid to Baker on account of unpaid fees, which would have made Baker an unsecured creditor. This transfer was for an antecedent debt, as evidenced by Baker's

testimony that the payment was for unpaid fees from the first case.  As only 104 days elapsed between the dismissal of the first case and the filing of the second case, the payment would have been made in the 90 days prior to the filing of the second bankruptcy.  Further, even if the transfer occurred outside the 90-day period, it could have still been avoided as Baker may have actually been an insider.  However, as already discussed, Baker did not take such a payment in this case.

While not in the record in this case, Baker has testified in previous hearings that debtors make "voluntary" payments on approved fees in Chapter 13 cases after a case has been dismissed but before a bankruptcy case is refiled.  These payments could be extremely problematic.  The relationship between a debtor and attorney warrants scrutiny given that the transactions may not have been conducted at arm's length.  Debtor's lawyers may infer or explicitly state that the refiling of a second bankruptcy case is conditioned on payment of these fees.  Debtors faced with collection activity, including foreclosure of their homes, often make unjustified payments.  The Trustee may argue, and the Court would likely agree, that Baker would be a creditor that exerts control or undue influence over debtors or that he engaged in less-than-arm's-length transactions with debtors.  Some debtors are in extremely vulnerable positions, such as needing to immediately file a bankruptcy to save a principal residence.  Debtors can be, and often are, incentivized to prioritize the repayment of debts over those of other creditors to avoid collection activity.  Section 329 of the Bankruptcy Code requires attorneys to disclose amounts they have been paid for representing the debtor in the year prior to filing.  This is further evidence that attorney-client relationships and payments should be viewed more stringently.

In Chapter 13 cases, attorneys must exercise judgment in their billing because increased attorney fees necessarily result in decreased dividends for unsecured creditors.  Further, because a debtor's plan payment will not be altered whether a dollar goes to an attorney or an unsecured creditor, debtors have little incentive to object or negotiate their attorney's fees.  Therefore, one court said that because of these peculiarities of Chapter 13 practice, "court scrutiny of Chapter 13 fee applications, even in the absence of an objection by a creditor or the trustee, is critical." *In re Stromberg*, 161 B.R. 510, 518 (Bankr. D. Colo. 1983).  Furthermore, individual unsecured creditors usually have little economic incentive to object to a particular fee application. Therefore, fee applications in Chapter 13 cases require close court scrutiny.

**THERFORE, IT IS ORDERED** that the First Chapter 13 Fee Application in the Mark Contreras case (Case No. 18-30995, ECF No. 71) is granted in part, and denied in part.  The Court finds the total fee requested by Baker is unreasonable as it exceeds the amount reasonably necessary for the work required to be performed to date, that the work performed was of limited or no benefit to the estate, and that it exceeds the prevailing rate for similar work.  The total fee awarded in this case is $2,106.45 ($10,990.55 is disallowed), and $496.58 is allowed for out of pocket expenses.  Reese W. Baker is **ORDERED** to disgorge the overpayment of $400 to debtor Mark Contreras within 14 days of the date of the entry of this order.  Proof of the disgorgement shall be filed on the Court's docket.

**IT IS FURTHER ORDERED** that the Chapter 13 Fee Application in the James L. Curry Case (Case No. 16-34693, ECF No. 117) is granted in part, and denied in part.  The total fee requested is unreasonable as it exceeds the amount reasonably necessary for the work required to be performed to date, the fee exceeds the prevailing rate for similar work, and the small return to general unsecured claims should not be further diminished to provide for these

excessive fees.  The total fee awarded in this case is $1,150.00 ($2,582.50 is disallowed), and $76.38 is allowed for out-of-pocket expenses.

**IT IS FURTHER ORDERED** that the Second Chapter 13 Fee Application in the David and Heather Campbell Case (Case No. 16-35750, ECF No. 98) is granted in part, and denied in part.  The total fee requested is unreasonable as it exceeds the amount reasonably necessary for the work required to be performed to date and that it exceeds the prevailing rate for similar work. The total fee awarded in this case is $650.00, ($1,219.23 is disallowed), and $228.23 is allowed for out-of-pocket expenses.

**FINALLY, IT IS ORDERED** that the First Chapter 13 Fee Application in the Wanda Hubbard case (Case No. 18-33054, ECF No. 53) is granted in part, and denied in part.  The total fee requested is unreasonable as it exceeds the amount reasonably necessary for the work required to be performed to date, the fee exceeds the prevailing rate for similar work, and that the small return to general unsecured claims should not be further diminished to provide for these excessive fees.  The total fee awarded in this case is $3,500.00 ($516.50 is disallowed), and $415.47 is allowed for out-of-pocket expenses.

SIGNED: 04/25/2019.

_____

Jeffrey P. Norman
United States Bankruptcy Judge